FIDELITY UNION TRUST COMPANY, as substituted trustee, &c., complainant,

v.

JOB HAINES HOME FOR AGED PEOPLE, and others, defendants.

[Decided July 18th, 1940.]

*Messrs. Hood, Lafferty & Campbell* (*Mr. Charles Danzig*), for the complainant.

*Messrs. Haines & Chanalis* (*Mr. Michael N. Chanalis*), for the defendant Job Haines Home for Aged People.

*Messrs. Sorg & Sorg* (*Mr. Herman D. Sorg*), for the defendant American Tract Society.

*Messrs. Whiting & Moore* (*Mr. Ira C. Moore, Jr.*), for the defendants Board of Home Missions, &c.

*Messrs. Carroll & Taylor* and *Mr. Robert Maier* (of the Pennsylvania bar), for the defendant Board of Pensions.

*Mr. J. Conner French,* for the defendant American Sunday School Union.

*Messrs. Pitney, Hardin & Skinner* (*Mr. Corwin Howell*), for the defendant Protestant Foster Home Society.

BIGELOW, V. C.

This cause brings before the court for construction the will and codicil of Mrs. Henrietta D. Crane, late of Newark.

The will itself contains these dispositions:

To Helen E. Crane testatrix gave the income of $6,000 for life and authorized her to dispose of one-half of that sum by her last will. "The remaining $3,000 shall, after her decease, be given the Job Haines Home located at Watsessing, New Jersey."

To Charles T. Crane testatrix gave the income of $4,000 for life and after his decease, the principal sum of $4,000 to the Protestant Foster Home Society.

To Mrs. Mary E. Hopper she gave $8,000 for life, remainder to the American Sunday School Union.

The residue of her estate testatrix directed to be divided equally among the Board of Home Missions of the Presby-

terian Church, the Board of Foreign Missions of the Presbyterian Church, the Presbyterian Board of Relief for Disabled Ministers and the Widows and Orphans of Deceased Ministers, the Board of Missions for Freedmen of the Presbyterian Church, the American Tract Society, and the American Sunday School Union.

Of the eight institutions mentioned in the will, five were each given a share in the residue—a share has amounted to about $4,000. One, the American Sunday School Union, was given a share in the residue and also $8,000, subject to a life estate. The Protestant Foster Home and the Job Haines Home, not mentioned in the residuary clause, were given the remainders of $4,000 and $3,000, respectively.

What the order for probate mentions as two codicils, I am satisfied is but a single instrument. It appears to be two merely because there was not room on a single sheet of paper for all the writing, and each sheet was signed by testatrix and by the witnesses. The body of the codicil written by testatrix' own hand, reads:

"I, Henrietta D. Crane, do hereby change the reading of amounts, mentioned in this will from $4,000.00, $6,000.00 and $8,000.00 each to $10,000 each, to Mary Elizabeth Hopper, Mrs. Maud Miller Keeney, Miss Helen Elizabeth Crane, Charles Thatcher Crane, each to have the interest of said $10,000 by semi-annual or quarterly payments, so long as they shall live. After the death of each of the above shall go to the support of missions as directed in the Will, except and by the words of the will, in the case of Helen E. Crane, she shall have the right to give by will $3,000.00 to such person or persons, or benevolences as she may choose.

"I, Henrietta D. Crane, do also leave $5,000.00 to Theodore Thomas Crane, son of Charles T. and Marie A. E. Crane for a life interest, for his personal use, and education, and after his death this $5,000.00 shall go to the support of missions, and shall be divided equally among the missionary societies mentioned in the will, for the distribution of 'the rest and residue, & of my estate' &c."

The question is, Who are the remaindermen? Life interests in $4,000, $6,000 and $8,000 had been given by the will to Mrs. Hopper, Helen E. Crane, and Charles T. Crane, with remainders respectively to the American Sunday School Union, the Job Haines Home, and the Protestant Foster Home. These sums are increased by the codicil to $10,000

in each case, and then the direction, "After the death of each of the above, shall go to the support of missions as directed in the will." The Protestant Foster Home and the Job Haines Home are perhaps not missions in every sense of that word, but the American Sunday School Union is. Did testatrix mean, in this somewhat casual manner, to revoke the gifts to the Job Haines Home and the Foster Home and to direct distribution of the sum of $17,000 among such of the institutions named in the residuary clause as might accurately be described as missions?

A codicil does not operate to revoke a bequest contained in a will, unless such revocation is clearly intended by the testator. *Lyon* v. *Clawson, 56 N. J. Eq. 642; 58 N. J. Eq. 584.* I find here no such intention of that character. The phrase "as directed in the will" savors more of ratification than of revocation.

The Job Haines Home and the Foster Home are charities offering relief, one to old folks, the other to children. The beginnings, as well as the financial support and the management of both societies, are associated with Protestant Christianity. The charter of the Foster Home (*P. L. 1849, p. 140*) requires that "The children shall be taught the essential principles of the Gospel, as held by evangelical Christians."

In *Bulkeley* v. *Worthington Ecclesiastical Society (Conn.), 63 Atl. Rep. 351,* holding that a self-supporting local church could not share in a gift to "missionary societies," the court said: "By universal acceptance, the word 'missionary,' whether as a noun or adjective, embraces, not only the conception of a religious, charitable, or educational work or worker, but also of such a work done through philanthropic motives, for the welfare of others too poor, too unappreciative, or too indifferent to do it themselves, and by persons supported by means furnished in part at least by some agency of which those for whom the work is done do not form a sustaining part. The derivative of the word implies a sending, and so it is that, in both technical and common speech, the idea of a sending forth, a sending forth to the service of others, the doing of a work for others, is associated with its

meaning." The word "missions" is broad enough to cover the two Homes, and I believe it was so used by testatrix.

Counsel agree that the codicil operated to give Mrs. Keeney the income of $10,000 as long as she lived. The direction for the disposition of the remainder interest therein can have no meaning except that it shall be divided among the "missions" mentioned in the residue, or perhaps that it be divided among all eight charities named in the will. The words of the codicil are that the money "shall go to the support of missions as directed in the will." The will devotes certain sums to two of the charities, or missions, and the residue to six others. There is no direction in the will that anything be divided among all eight. The particular gifts to the Foster Home and the Job Haines Home are all that testatrix intended them to receive from her estate. The sum of $10,000 after the life estate of Mrs. Keeney, is divisible among the six residuary legatees. All six are missionary societies in the strictest sense of that term, except the Presbyterian Board for Relief of Disabled Ministers and the Widows and Orphans of Deceased Ministers. The work of the board is correctly indicated by its title. It is a missionary institution in the same sense as are the Job Haines Home and Foster Home, and shares in this gift.

The second sentence of the first paragraph of the codicil has, in my opinion, this meaning:

After the death of Mrs. Hopper, the sum of $10,000 of which she is given the interest for life, shall go to the support of the American Sunday School Union as directed in the will; after the death of Helen E. Crane, $7,000 of her $10,000 shall go to the Job Haines Home; after the death of Charles T. Crane, his $10,000 shall go to the Foster Home; and after the death of Mrs. Keeney, her $10,000 shall go to the six societies named in the residuary clause of the will, to be equally divided among them.

Under the second paragraph of the codicil, the fund of $5,000 obviously goes to the six societies mentioned in the residuary clause of the will, or to such of them as may properly be described as "missionary societies." The term "missionary societies" is presumably used here in the same

broad sense in which "missions" is employed in the first paragraph. *Traverso* v. *Traverso, 99 N. J. Eq. 514; 101 N. J. Eq. 308.* The Board of Relief for Ministers shares in the gift of $5,000 after the death of Theodore T. Crane.